UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY ALLEN STRANG,

              Plaintiff,                      Civil Action No. 13-11270

       v.                          District Judge Victoria A. Roberts
                                     Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

## REPORT AND RECOMMENDATION TO
## DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13] AND
## GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16]

Plaintiff Ricky Allen Strang appeals Defendant Commissioner of Social Security's ("Commissioner") denial of his application for disability insurance benefits and supplemental security income. (*See* Dkt. 1, Compl.) Before the Court for a report and recommendation (Dkt. 3) are the parties' cross-motions for summary judgment (Dkts. 13, 16). For the reasons set forth below, this Court finds that substantial evidence supports the decision of the Administrative Law Judge. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 13) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 16) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## I. BACKGROUND

Plaintiff completed high school and some post high school training. (Tr. 28-29.) He has worked as an automobile detailer, a janitor, and for several years at a tool and die shop. (Tr. 29, 47-49.) Plaintiff was 31 years old at the time he fell and injured his back, an injury he alleges renders him unable to engage in all competitive work. (Tr. 16, 30-31.)

### A. Procedural History

On July 18, 2010, Plaintiff applied for disability insurance benefits and supplemental security income asserting that he became unable to work on June 15, 2007. (Tr. 102-06, 107-115.) The Commissioner initially denied Plaintiff's disability applications on December 16, 2010. (Tr. 56-65, 66-75.) Plaintiff then requested an administrative hearing, and on September 12, 2011, he appeared before Administrative Law Judge JoErin O'Leary, who considered his case *de novo*. (Tr. 23-55.) Although informed of his right to representation, Strang chose to appear and testify without the assistance of an attorney or other representative. (Tr. 25-27.) Indeed, he signed a waiver indicating that preference. (*Id*. at 27.) In a December 30, 2011 decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 17.) The ALJ's decision became the final decision of the Commissioner on January 23, 2013, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 3-5.) Plaintiff filed this suit on March 22, 2013. (Dkt. 1, Compl.)

### B. Testimony at the Hearing Before the ALJ

#### 1. *Plaintiff's Testimony*

Plaintiff testified that there was no medical history to be added to his file since the consultative examination. (Tr. 27.) He indicated that he had a family doctor, but he stopped going

2

when he ended physical therapy.  (*Id*.)  He also indicated that no physician was prescribing him medications; however, he was growing his own "medical marijuana."  (Tr. 28.)

Plaintiff testified about his accident and attempts at treatment.  In early 2007, Plaintiff fell and went to the emergency room.  (Tr. 34.)  The ER doctor administered cortisone shots, which were not successful in alleviating Plaintiff's pain.  (*Id*.)  Next, Plaintiff indicated that he tried physical therapy and medications.  (*Id*.)  Plaintiff said that the medications were "messing with [his] mind." (Tr. 35.)  Plaintiff could not recall the names of all of his medications, but did remember Vicodin. (*Id*.)  Plaintiff testified that the side effects were not tolerable, so he decided to stop the medications altogether.  (*Id*.)  This is when his doctor recommended medical marijuana.  (Tr. 35-36.)  Plaintiff testified that he has been using marijuana on a daily basis for two years.  (Tr. 36, 43.)  Regarding its effectiveness, Plaintiff said "It's getting to the point, just like the pills were -- I mean, it works at first. . . . But it does something to me like psychologically."  (*Id*.)  Plaintiff clarified that it helps for the pain, to relax him, but not for his "mental state."  (*Id*.)  Plaintiff indicated that he was not in treatment for depression or anxiety.  (*Id*.)  Plaintiff testified that his doctors "wrote off" the medicine because of his side effects.  (Tr. 37.)  Plaintiff testified to feeling angry or depressed, but was not sure if it was due to his pain, or the medications.  (*Id*.)

Plaintiff also testified about his recent attempts at finding alternative treatments.  Plaintiff went to see his family doctor, Dr. Wagner,  prior to the administrative hearing for the purpose of finding a surgeon to perform a disk fusion.  (Tr. 37.)  Plaintiff characterized these appointments as "checkups" and not for "pain management."  (*Id*.)  Plaintiff testified that he was disqualified as a surgical candidate, however, because he used medical marijuana.  (Tr. 37-38.)  Plaintiff also indicated that he was refused acupuncture treatments for the same reason.  (Tr. 38-40.)

3

Plaintiff testified about his home life and functional abilities. Plaintiff indicated that he is married and has three children ages six, 14, and 16. (Tr. 40.) His wife went back to school and works. (*Id.*) During the summer, Plaintiff watches his children. (Tr. 41.) Plaintiff indicated that a typical day is to "sit down and be bored." (*Id.*) Both Plaintiff and his wife have medical marijuana cards, and their 16-year old helps with the maintenance of the plants; for example, the heavy lifting. (*Id.*) Plaintiff also indicated that he is able to drive a car, but does not do so often. (Tr. 42.) Plaintiff testified that he can lift 20-30 pounds routinely. (Tr. 42.) He also said that he alternates from sitting to standing because his feet hurt when he walks. (*Id.*) Plaintiff can sit comfortably for a couple of minutes, but standing is a more comfortable position than sitting. (*Id.*) Plaintiff sleeps in a recliner because it takes the pressure off of his back. (Tr. 43.)

Plaintiff also offered testimony regarding his past work experiences. Plaintiff testified that he has not worked since his fall in 2007. (Tr. 44.) Prior to his fall he worked as a machinist and the heaviest thing lifted was 100 pounds. (Tr. 47-48.) Plaintiff also worked as an automobile detailer; there the heaviest thing he lifted was 20 pounds. (Tr. 48.) Plaintiff also worked as a janitor. (Tr. 49.)

### 2. *The Vocational Expert's Testimony*

The ALJ solicited testimony from a vocational expert ("VE") to determine whether jobs would be available for someone with functional limitations approximating Plaintiff's. The ALJ asked about job availability for a hypothetical individual of Plaintiff's age, education, and work experience who was capable of light work except that they

> would only be able to stand and walk for a total of four hours in a regular eight-hour workday as opposed to eight or as opposed to six, I think, for regular light. They would be unable to climb ladders, ropes or scaffolds. They would be limited to occasionally climbing

> ramps and stairs. Occasionally crouching or crawling. They would
> have to avoid concentrated exposure to occupational hazards such as
> unprotected heights or dangerous, moving machinery.

(Tr. 49-50.)  The VE testified that the hypothetical individual would not be able to perform any of

Plaintiff's past work, but that a significant number of jobs existed that included a sit/stand option

and were at the light work level, including: assembler or production worker, and hand packager.

(Tr. 50.)  The VE testified that there were also jobs available at the sedentary level including:

assembly production worker, machine operator or tender without exposure to moving parts, and

inspector.  (Tr. 50-51.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act (the "Act"), disability insurance benefits and supplemental

security income "are available only for those who have a 'disability.'"  *See Colvin v. Barnhart*, 475

F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to
> last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The Social Security regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment
> must be severe before he can be found to be disabled.

> 3. If claimant is not doing substantial gainful activity and is suffering
> from a severe impairment that has lasted or is expected to last for a
> continuous period of at least twelve months, and his impairment
> meets or equals a listed impairment, claimant is presumed disabled

5

without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ O'Leary found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of June 15, 2007.  (Tr. 12.)  At step two, she found that Plaintiff had the following severe impairment: degenerative disc disease.  (*Id.*)  Next, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment.  (*Id.*)  Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work except that he can

> stand and walk for no more than four hours in an eight-hour workday. The claimant can never climb ladders, ropes, or scaffolds. He can climb ramps and stairs on no more than an occasional basis. The claimant can only occasional[ly] crouch and crawl. He must avoid concentrated exposure to occupational hazards such as unprotected heights or dangerous moving machinery.

(Tr. 13.)  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. .)  At step five, the ALJ found that sufficient jobs existed in the national economy for someone of Plaintiff's age, education, work experience, and residual functional capacity.  (Tr. 16.)  The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act from the

6

alleged onset date through the date of her decision.  (Tr. 17.)

## III.  STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole.  *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The Court "may look to any evidence in the record, regardless of whether it has

been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir.

2001).  There is no requirement, however, that either the ALJ or this Court discuss every piece of

evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th

Cir. 2006).  Further, this Court does "not try the case de novo, resolve conflicts in evidence, or

decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV.  ANALYSIS

Plaintiff alleges three claims of error: (1) the ALJ failed to develop the administrative record

thus depriving Plaintiff of a full and fair hearing; (2) the ALJ erred in weighing the opinion

evidence; and (3) the ALJ improperly discounted Plaintiff's credibility.  (Pl.'s Mot. Summ. J. at 9-

23.)

### A.  The Administrative Record

Plaintiff argues that the ALJ failed to fully develop the medical record beyond those in the

file at the time of his initial application for benefits in July 2010 and, therefore, deprived him of a

full and fair hearing.  (Pl.'s Mot. Summ. J. at 9-15.)

Plaintiff claims that the following evidence was contained in the record at the time of the

hearing in September 2011 : (1) exam notes from The Hemp and Cannabis Foundation ("THCF")

Clinic dated March 26, 2010 (Tr. 164-171); (2) progress notes from Bay Area Family Care dated

September 5, 2006 to March 27, 2010 (Tr. 172-195); (3) progress notes from Wellness Family

Practice dated September 15, 2006 to July 1, 2010 (Tr. 276-282); and (4) records from Evergreen

Physical Therapy dated May 27, 2010 to July 7, 2010 (Tr. 283-303.)  Plaintiff claims that despite

treatment there is no medical evidence in the record after July 7, 2010, and up until the date of the

ALJ decision on December 30, 2011.  (Pl's Mot. Summ. J. at 9.)  Plaintiff claims that had the ALJ

fully developed the record, it would have reflected that he had been prescribed Vicodin and other narcotic pain medications. (Pl.'s Mot. Summ. J. at 15.) Plaintiff claims that the ALJ erred by not using this information to analyze the severity of his pain and make an accurate assessment of his ability to engage in substantial gainful activity. (*Id.*)

Before addressing Plaintiff's specific argument regarding post July 7, 2010 evidence, the Commissioner argues that the ALJ's residual functional capacity assessment is supported by substantial evidence. (Def.'s Mot. Summ. J. at 5.)

In support, the Commissioner points out that the ALJ gave significant weight to the opinion of reviewing state agency physician, Robert Nelson, M.D. (Tr. 15 (citing Tr. 61-53, 71-73).) State agency medical consultants, like Dr. Nelson, are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(I). Dr. Nelson reviewed Plaintiff's consultative physical evaluation as well as the medical evidence and gave his opinion on Plaintiff's work related limitations. (Tr. 61-62, 71-72.) It was reasonable, contends the Commissioner, for the ALJ to rely on Dr. Nelson's opinion. *See* 20 C.F.R. § 404.1527(d)(3); 404.1527(d)(4); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651 (6th Cir. 2006).

Dr. Nelson opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 61, 71.) He further opined that Plaintiff could stand for four hours and sit for six hours in an eight-hour workday. (*Id.*) Dr. Nelson indicated that Plaintiff should only occasionally crouch, crawl, climb ladders, ropes and scaffolds, and needed to avoid workplace hazards. (Tr. 62-73, 72-73.) Plaintiff should also frequently avoid climbing ramps and stairs, balancing, and kneeling. (Tr. 62, 73.) The ALJ's functional capacity report was consistent with Dr. Nelson's opinion.

In addition to Dr. Nelson's opinion, the ALJ discussed other evidence supporting his assessment. For example, Plaintiff testified that he stopped working in 2007 following a fall that injured his back. (Tr. 30.) At that time, medical records showed minimal physical findings. (Tr. 14.) Emergency room records noted that Plaintiff's thoracic spine was not tender and that there was only mild tenderness in the lumbar spine, sacroiliac region, and in the right buttock. (*Id*. (citing Tr. 186).) The ALJ also noted,

> The claimant's pelvis was stable to pelvic rock; and he had normal range of motion of the right hip, a nontender trochanter, and normal range of motion of the right hip. A radiology report of the lumbar spine showed possible bilateral spondylolysis at level L5 with only minimal grade-1 anterior spondylolisthesis of level L5-S1. There were also degenerative changes of the lower thoracic spine. An imaging study of the pelvis was negative. The claimant was diagnosed with a low back contusion, in lieu of spondylolysis and/or spondylolisthesis. He was prescribed anti-inflammatory medication and advised to follow-up with his primary doctor. The claimant visited his primary doctor the following day, and was prescribed narcotic pain medication [].

(Tr. 14 (citing Tr. 186-87).)

The ALJ further cited the largely normal physical examination findings of consultative examining physician, Scott Lazarra, M.D. (Tr. 14-15 (citing 276-81).) Dr. Lazarra opined that there was no evidence of "joint laxity, crepitance, or effusion." (Tr. 279.) While Plaintiff has "tenderness over the facet joints at L5-S1 on the left side and over the left sciatic notch" he had no difficulty getting on and off the examination table, heel toe walking, or standing. (*Id*.) Additionally, Plaintiff's grip strength remains intact and dexterity is unimpaired. (*Id*.) Dr. Lazarra also indicated that Plaintiff can button clothing and open a door. (*Id*.) Moreover, Plaintiff's straight-leg test was negative and there was no paravertebral muscle spasm indicated. (*Id*.) With respect to spondylolisthesis, Dr. Lazzara opined:

10

> He did have some subtle diminished range of motion in his back today and may have some underlying spinal stenosis. His MRI did not suggest that an EMG would be helpful. He did have some tenderness over the sciatic notch, but there were no radicular symptoms or neuropathy today.  It does compensate with a guarded, widebased gait. He does not need an assist device at this point. He does take medical marijuana for pain which seems to control the symptoms, however, an anti-inflammatory would also be of benefit. He would be remedial with progressive treatment.

(Tr. 281.)

This Court concludes that the ALJ reasonably relied on the above evidence, Dr. Nelson's opinion, the relatively minor findings on the imaging studies, and the largely normal physical studies, to evaluate Plaintiff's residual functional capacity.  (Tr. 13-15.)  While Plaintiff disagrees with the ALJ, the ALJ's conclusions were within a reasonable zone of choice.  *See Mullen*, 800 F.2d at 545 (where an ALJ's finding falls within the "zone of choice" within which a decisionmaker can go either way, the courts will not overturn it); *see also Blakely v. Comm'r of Soc. Sec*. 581 F.3d 399, 406 (6th Cir. 2009).

Next, this Court considers Plaintiff's specific argument that the Commissioner failed to adequately develop the record.  While Strang acknowledges that he must establish disability, *see* 20 C.F.R. § 404.1512(a), he relies on *Lashley v. Secretary of HHS*, 708 F.2d 1048 (6th Cir. 1983), to argue that a special, heightened duty required ALJ O'Leary to further develop the record here. In *Lashley*, the Sixth Circuit reversed a denial of disability benefits partly because the ALJ failed to develop "a full and fair record." *Id.* at 1051. In that case, however, the claimant was a 79 year-old with a fifth grade education who, after suffering two strokes, had trouble reading, writing, and reasoning. *Id.* at 1049.  The Court was troubled that at Lashley's hearing the ALJ conducted a superficial examination that failed to heed the claimant's obvious confusion and inability to

11

effectively present his case. *Id.* at 1052. Finding the process insufficient, the Court held that under special circumstances—"when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures—an ALJ has a special, heightened duty to develop the record." *Id.* at 1051-52.

The Sixth Circuit has reaffirmed the *Lashley* rule that absent such special circumstances, the claimant bears the ultimate burden of proving disability. *See, e.g., Wilson v. Comm'r of Soc. Sec.* 280 F. App'x 456, 459 (6th Cir. 2008) (ALJ did not err in not developing record where plaintiff chose to proceed without counsel, and the hearing transcript discloses her grasp of the proceedings and the adequacy of her case presentation to the ALJ); *Trandafir v. Comm'r of Soc. Sec.*, 58 Fed.Appx. 113, 115 (6th Cir. 2003) (citing rule).

As correctly noted by the Commissioner, Plaintiff only argues that he was unrepresented. (Pl.'s Mot. Summ. J. at 9-15.)  He does not contend that he was also incapable of presenting an effective case, or that he was unfamiliar with the hearing procedures.  Indeed, a review of the administrative transcript makes clear that Plaintiff was able to present his case and appropriately answer questions regarding his medical history and limitations in a manner that indicates a familiarity with the process.  For example, Plaintiff completed submissions to the agency, including function forms, an agency hearing request, a comprehensive 30-page hearing transcript, and a request to review the ALJ's decision–all showing a familiarity of the process.  For these reasons, this case is more akin to *Wilson,* and the special circumstances that applied in *Lashley* do not apply here.

The Court notes that this is especially true because at the hearing, Plaintiff identified two potential individuals that the ALJ allegedly did not seek records from: 1) Plaintiff's family practice doctor, Dr. Wagner; and 2) his physical therapist.   (Pl. Mot. Summ. J. at 12-15 (citing Tr. 33, 37-

40).)  It is uncontested that the physical therapist's records were faxed after the hearing and are included in the record at Exhibit 5F.  (Tr. 283-303.)  Plaintiff testified that he completed physical therapy in July 2010 and the "date of discharge" is listed as July 7, 2010.  (Tr. 283.)  Moreover, Plaintiff testified that he had not received any treatment for his back after July 7, 2010, aside from his use of medical marijuana.  (Tr. 27-28.)  Despite this admission, Plaintiff argues that the ALJ erred by not soliciting medical records from Dr. Wagner beyond what was already in the record. Plaintiff testified that after he ended physical therapy in July 2010 he went to Dr. Wagner for "check ups" and that these check-ups consisted of Dr. Wagner looking for a different type of treatment.  (Tr. 36-40, 44.)  Plaintiff was clear that he had not seen Dr. Wagner for treatment or pain management. (*Id*.)

> ALJ: Okay. Now, is Dr. Wagner prescribing any kind of like non-narcotic things like a muscle relaxer or like a prescription strength Ibuprofen, anything like that?
>
> CLMT: No. When I first started seeing him, they told me that they were -- they didn't deal in pain management.
>
> ALJ: Okay.
>
> CLMT: But they could find out something to do to help me with my back.
>
> ALJ: Okay.
>
> CLMT: That's pretty much is what it's been. It's not been about the medication with him. It's like trying to get to the surgeon.
>
> ALJ: Okay.
>
> CLMT: And get it figured -- get the problem figured out.

(Tr. 44.)  Rather, Dr. Wagner's role was to provide referrals to other treatment providers: to Bay

Medical, Dr. Zaza, and Dr. Meyers.  (Tr. 37-40 (*see also* Tr. 200-03, 202, 199.)  Plaintiff simply has not provided anything to suggest that these check-ups would offer any evidence that would change or alter the ALJ's decision.  Plaintiff  has additionally not pointed to any referrals that are not already in the record.  As such, Plaintiff has not demonstrated any prejudice even if the ALJ were required to summon the records of Dr. Wagner in this instance.  *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) (citations and internal quotation omitted) ("courts are not required to convert judicial review of agency action into a ping-pong game where remand would be an idle and useless formality").

### B.  The Opinion Evidence

#### 1.    Dr. Wagner

Plaintiff also claims that the ALJ erred when she failed to note, comment on, or assign weight to the opinion of Plaintiff's treating physician, Dr. Wagner, in violation of 20 C.F.R. § 404.1527(d).  (Pl.'s Mot Summ. J. at 15-18.)  Plaintiff specifically testified that Dr. Wagner provided the opinion that he should not work due to his back condition.  (Tr. 32.) Moreover, Plaintiff testified that when he talked to Dr. Wagner about returning to work, Dr. Wagner responded that he did not know how Plaintiff could work because of the knots on the right side of Plaintiff's spine.  (Tr. 31-32.)

This Court agrees with the Commissioner that while Plaintiff's recitation of Dr. Wagner's statements accurately reflect what was said in the hearing, the statements are only second-hand recitations of statements purportedly made by Dr. Wagner.  Importantly, Plaintiff has not identified these statements in the record, nor has the Court found them.  As such, the ALJ was not required to give them any weight under 20 C.F.R. § 404.1527(d).  Moreover, as will be discussed below, the

ALJ reasonably found Plaintiff's testimony to be only partially credible. For both of these reasons, there is no error in the ALJ's handling of the evidence here.

### 2. *The Physical Therapist*

Plaintiff contends that the ALJ erred by failing to address or assign weight to the opinion of Plaintiff's treating physical therapist. (Pl.'s Mot. Summ. J. at 18-22.) Plaintiff argues that his July 7, 2010 physical therapy discharge summary was not consistent with the ALJ's RFC and had the ALJ properly assessed the physical therapist's opinion, it would impact the ALJ's conclusion that Plaintiff could engage in light work. (*Id.*) Specifically, Plaintiff contends that the discharge summary stated that his functioning and mobility were independent with pain, and rated his pain at 5/10. (Tr. 283.) His straight-leg raise was 50 degrees on the right side and 43 degrees on the left. (*Id.*) The assessment indicated that Plaintiff was not progressing and his rehabilitation potential was "poor to guarded." (*Id.*) Under "Goals," it stated: "[Plaintiff] has little strength in bilateral lower extremities with exception of hips, but unable to meet other long term goals due to early discharge and poor prognosis." (*Id.*) Plaintiff acknowledges that the ALJ referred to a physical therapy progress note dated July 2010, but contends that the ALJ erred by not noting any findings or opinions expressed in the physical therapy records. (Tr. 14.)

In discussing Plaintiff's physical therapy history, the ALJ stated:

> The claimant attended physical therapy from May 2010 to July 2010. In July 2010, the claimant reported to his treating physician that the physical therapy was making his pain worse. Shortly thereafter, the claimant discontinued physical therapy, and his family doctor referred the claimant to a pain clinic.

(Tr. 14.)

Plaintiff's physical therapist (who Plaintiff never identifies by name), is not considered either

a "treating source" or an "acceptable medical source." *See* 20 C.F.R. §§ 404.1502, 416.902 (defining

an "acceptable medical source" as a source described in 20 C.F.R. §§ 404.1513(a), 416.913(a), who

provides evidence about your impairments, i.e., licensed physicians, licensed or certified

psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language

pathologists). Rather, a physical therapist is considered to be an "other" medical source. *See* 20

C.F.R. §§ 404.1502, 416.902 ("medical sources" include other health care providers who are not

acceptable medical sources); 404.1513(d)(1), 416.913(d)(1) (nurse practitioners, physician'

assistants, naturopaths, chiropractors, audiologists, and therapists).

In SSR 06-03p, the agency explained the need to differentiate between the opinions given

by an acceptable medical source and other health care providers:

> The distinction between 'acceptable medical sources' and other
> health care providers who are not 'acceptable medical sources' is
> necessary for three reasons. First, we need evidence from 'acceptable
> medical sources' to establish the existence of a medically
> determinable impairment. *See* 20 CFR 404.1513(a) and 416.913(a).
> Second, only 'acceptable medical sources' can give us medical
> opinions. *See* 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only
> 'acceptable medical sources' can be considered treating sources, as
> defined in 20 CFR 404.1502 and 416.902, whose medical opinions
> may be entitled to controlling weight. *See* 20 CFR 404.1527(d) and
> 416.927(d).

SSR 06-03p.

Because a physical therapist is not an acceptable medical source, ALJ O'Leary was not

required to provide good reasons for the weight given to her opinions under §§ 404.1527(d)(2),

416.927(d)(2). *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Wilson v.

Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004); *Walters v. Comm'r of Soc. Sec.*, No.

11-15171, 2013 WL 1364719, at *10 (E.D. Mich. Mar. 12, 2013), *adopted by* 2013 WL 1364712

(E.D. Mich. Mar. 29, 2013) (Friedman, J.) (ALJ only required to "consider" opinions of non-acceptable medical sources).  Nevertheless, SSR 06-03p provides that the Commissioner should evaluate the opinions expressed by other medical sources on "key issues":

> These regulations provide specific criteria for evaluating medical opinions from 'acceptable medical sources'; however, they do not explicitly address how to consider relevant opinions and other evidence from 'other sources' listed in 20 CFR 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p.

While the ALJ's explanation for discounting the physical therapist's opinions may not be as exhaustive as Plaintiff might desire, the Court notes that it was sufficient. *See Mulkey v. Comm'r of Soc. Sec.*, No. 10-cv-466, 2011 WL 4528485, at *7 (W.D. Mich. Jun.14, 2011) (even after the implementation of SSR 06-03p, "ALJ was not required to articulate 'good reasons' for the weight assigned to" the opinion of a non-medical source).  It was clear that the ALJ reviewed and assessed the notes of the physical therapist in determining the RFC. (Tr. 14.) Moreover, as discussed above, substantial evidence supports the ALJ's rationale for finding Plaintiff capable of performing light work, including the opinion of reviewing physician Dr. Nelson, and the findings of consultative examining physician, Dr. Lazarra.  Importantly, Dr. Nelson had the benefit of reviewing the physical therapy notes when he concluded that Plaintiff was capable of a reduced range of light work. (Tr.

17

61, 71-72.)  For all of these reasons, the ALJ did not err in her treatment of the physical therapy evidence.

### C. **Credibility**

Plaintiff also alleges that the ALJ improperly discounted his credibility because of his failure to seek substantial medical treatment.  (Pl.'s Mot. Summ. J. at 22-23.)  Plaintiff claims that his lack of treatment is the result of an inability to afford treatment, not an indication of lack of symptomatology.  (*Id.*)  Plaintiff claims that the ALJ's decision repeatedly notes Plaintiff's lack of treatment records (Tr. 14, 15) and his inability to receive treatment because of lack of insurance (Tr. 14 (*see also* Tr. 202)).  Plaintiff claims that these references show that the ALJ impermissibly discounted his credibility regarding the intensity of his symptoms and pain.

An ALJ's credibility assessment proceeds in two steps. *Baranich v. Barnhart*, 128 F. App'x 481, 487 (6th Cir. 2005). First, the ALJ determines whether the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce [the claimant's] symptoms." 20 C.F.R. § 404.1529(c)(1); *Baranich*, 128 F. App'x at 487. If so, the ALJ then evaluates the "intensity and persistence" of the claimant's symptoms. 20 C.F.R. § 404.1529(c)(1). At this second step, the ALJ should not reject a claimant's "statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* S.S.R. 96-7p, 1996 WL 374186. To the contrary, the regulations list other considerations that should inform the ALJ's credibility assessment. 20 C.F.R. § 404.1529(c)(3). Although an ALJ need not explicitly discuss every factor, *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005), an ALJ's "decision must

contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight," S.S.R. 96-7p, 1996 WL 374186 at *2.

Within the above framework, an ALJ's credibility analysis warrants considerable deference: a court is to accord an "ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) ("Claimants challenging the ALJ's credibility findings face an uphill battle."). Further, an ALJ's credibility analysis is subject to harmless error review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (citing *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) with approval); *Carmickle*, 533 F.3d at 1162 ("So long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." (quotation marks omitted and punctuation altered)).

With respect to Plaintiff's credibility, ALJ O'Leary stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The evidence of record shows that the claimant's degenerative disc disease has little more than a minimal effect on the claimant's ability to perform substantial gainful activity. The evidence suggests that,

19

when the claimant began using narcotic pain medication, he stopped all treatment, including visits to his treating physician, for several years. Further, by the claimant's own admission, the medical Marijuana alone works to alleviate his pain. This is true, even without the use of an anti-inflammatory medication. The claimant's testimony that the medical Marijuana is causing negative side-effects is contradicted by the fact that he continues to use medical Marijuana, and has done so since March 2010. Last, the claimant has not followed up with Dr. Meyers regarding a pain management program from the time it was recommend[ed] by his treating physician in August 2010, over one year ago. This suggests that the claimant's allegations of debilitating pain are not nearly so severe as he has alleged.

.      .      .

In summary, the above residual functional capacity assessment is supported by the evidence of record as a whole. I note that the claimant has made inconsistent statements throughout the record. Although inconsistent information provided by the claimant may not be the result of a conscious intent to mislead, such inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.

(Tr. 15.) Contrary to Plaintiff's suggestion, as reflected by her opinion, the ALJ did not improperly discount his credibility due to an inability to pay for treatment, or a lack of heath insurance. (*Id.*) However, it is unnecessary to address this issue. Plaintiff neither identifies where the ALJ discounts his credibility on this ground (the Court finds no such statement), nor does Plaintiff set forth the appropriate legal standard for evaluating such a claim. *See, e.g., Strong v. Soc. Sec. Admin.*, 88 Fed. App'x 841, 846 (6th Cir. 2004) ("The issue of poverty as legal justification for failure to obtain treatment does not arise unless a claimant is found to be under a disabling condition"). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96

(6th Cir. 1997).  Accordingly, this claimed error is deemed waived.

Moreover, in *Van Heck v. Commissioner of Social Security*, No. 06-15233, 2008 WL 1808320 (E.D. Mich. Apr. 21, 2008), the District Court dismissed a similar argument, also finding compelling plaintiff's ability to obtain medical treatment when necessary.  In this case, it appears that Plaintiff was able to pay for medical treatments, including medical marijuana and physical therapy visits, when necessary.

Further, this is not a case in which the ALJ used boilerplate language "without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand."   *Brown v. Comm'r of Soc. Sec.*, No. 12-14506, 2013 WL 6537980, at *17 (E.D. Mich. Nov. 18, 2013) (citing *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012))).  Nor did the ALJ fail to discuss her reasoning, or offer explanations that were not consistent with the record. *Cf. Rogers*, 486 F.3d at 248.  Most notably, the ALJ reasoned that Plaintiff's statements contained several inconsistencies.  (Tr. 15.)  For example, Plaintiff testified that he could lift up to 30 pounds, but told Dr. Lazzara that he could lift no more than 10 pounds.  (Tr. 14-15 (citing Tr. 42, 278).)  Also, Plaintiff testified that some of his initial treatment for back pain included injections, but told Dr. Lazzara that he had no injection treatment.  (Tr. 34, 278.)

Plaintiff essentially asks the Court to re-weigh the evidence; however, this Court's scope of review is limited, and the Court will not disturb the ALJ's credibility determination absent a compelling reason. *Sims v. Comm'r of Soc. Sec*, 406 F. App'x 977, 981 (6th Cir. 2011). The Court finds no such compelling reason here.

## V.  CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that substantial evidence supports the

decision of the Administrative Law Judge. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 13) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 16) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  February 20, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 20, 2014.

s/Jane Johnson_____
Deputy Clerk

23